Case number 17-7114, Daryl Thomas Agnew et al. Appellants v. Government of the District of Columbia. Mr. Claiborne for the appellants, Ms. Lezak for the affiliate. Good morning, Your Honors. Good morning. May it please the Court, my name is William Claiborne. I'm on behalf of appellants who were plaintiffs below. And my plaintiffs have challenged the district's in-promoting statute on the grounds that it violates the second prong of the Board for Vagueness Doctrine because it encourages arbitrary and discriminatory enforcement. And it is, in fact, arbitrarily and discriminatorily enforced because it's enforced almost entirely against African Americans. The statute is so broad that a single person standing on a sidewalk or even next to a sidewalk, even when no one else is around, regardless of their mental state, can be ordered to leave the area. The statute says it is unlawful for a person alone or in concert with others to crowd, obstruct, or incommodate the use of any street, avenue, alley, road, etc. It doesn't say that a person standing there is violating the law. It says if they are obstructing the use of the sidewalk, the road, whatever. That's a little different than what you're positing. Well, Your Honor, in a sense, what you're saying is true. That's not in a sense. It's right there in your brief. It's right there in the statute. The statute does not... It's not in a sense. It's just true. That is what the statute says. It's true. The statute does not prohibit standing or walking. However, every act of standing or walking, as the terms are used in the statute, results in crowding, incommodating, or obstructing. Really? Well, for example... If you're standing on a sidewalk, you're automatically obstructing the use of it? That's the way it's enforced. Is that your opinion? Do you have to convince us of that in order to win your case? Actually, I do not, but that is just how broad it is. And we can see that when we look at how it was applied to the plaintiffs in the case. None of them was totally blocking the sidewalk. None of them was crowding anybody, whatever crowding means. And none of them was annoying or incommodating anybody. But you're not bringing in his applied challenge. You brought a facial challenge. Well, I brought... I mean, you have a lot in your complaint, in your brief, about the specific facts of the case, but aren't I right that our judgment is based just on the language of the statute? You could have brought in his applied challenge, or you could have brought a challenge arguing that this statute is used in the district for discriminatory purposes, but that's not what you did. So the only question we have to ask, I think, is whether these three words in the statute, we just look at those. It doesn't make any difference what the facts of the case are. Is that right? Not from plaintiff's point of view, and here's why I say that. Well, your statement had a couple of points in it. One of them is this statute magnifies any indeterminacy in the three predicates because the conduct that the statute regulates is so pervasive. Every single act of use in the sidewalk can be construed as crowding and promoting or obstructing, and so this statute mimics everyday life, and that's what makes these terms... and the court said that passed this test, and in Coates, the court approved block. So why are the words here, crowding and incommoding, why are they more subjective than block and obstruct? Well, in Shuttlesworth, it's true. The Supreme Court used the word obstruct, and if you go back and look at the Alabama Court of Appeals, they used the word obstruct, but the Alabama court based its judgment, as it said, that there must be an actual showing of blocking. So to the Alabama court, the word obstruct means block. The word obstruct has many, many different meanings, and the D.C. Council, the subcommittee working group... Wait, excuse me. As Judge Sintel said, it says crowd, obstruct, or incommode the use of any street. So for the district to succeed in the prosecution of this statute, they have to show that they were blocking the use. You're right about that. Well, for example, in the Bay case, I attached the summary judgment opinion in the Bay case. Some individuals were standing in a private yard next to the sidewalk. The officers told them to leave, and all but two of them left. So when the officers came back approximately an hour later, there were two young men standing in a private yard next to a sidewalk, and one of them left. And so you just had one person left. Now, this was arrested for blocking. Well, he was arrested for incommoding, crowding, obstructing the sidewalk. And in that case, Judge Dixon said, look, for the officer to issue a dispersal order, I don't even think the officer must have probable cause that the person at issue was crowding, obstructing, or blocking. So you have a situation. What ultimately happened in that case? Beg your pardon? What ultimately happened in that case you were just describing? Well, in the criminal case, Mr. Bay was arrested and released after spending a night at the station. What ultimately happened was that he was not found guilty of violating the statute, right? He was released. He was never even brought to trial, was he? Well, he was not brought to trial, but he was arrested, and he did spend a night in jail. So the fact that an officer misused a statute does not mean that the officer's definition comes in place of the words in the statute. In fact, it's quite the contrary. You have an example there of how the courts looked at it and said, that's not a violation. I don't know if the courts, the higher up in the police department, I guess, looked at it and said, that's not a violation. Well, I think... There's no statute that can't be misapplied by an officer. Well, I think my point is really what your point is. The officer does not even need probable cause to issue a dispersal order. And so the statute doesn't tell the officer... But you still don't have a violation unless you have a blocking prescription of the use. Well... And he didn't have it that time because that's not the way that statute's written. So I think you've got a counter case there that's actually weighing against your position, counsel. Well, if you look at my other three plaintiffs, each one of them was standing on a sidewalk, and each one of them was told to leave because they were not in motion, and each one of them was arrested. And in each one of these cases, the person was using the sidewalk the way people use it every day. And the statute applied directly to them. They were doing according to the statute. You see, here's the thing. There is nothing in the statute... One of the things is these three words are not a single unitary phrase. Each one is different. The Court of Appeals... I'm sorry. The D.C. Council was very clear about that. They rejected the use of the single word block, and they retained each of these three words. And under the canons of construction, if you've got three words, each one of them has a different meaning. But, counsel, under our decision in Bronstein, we took a slightly different approach to that interpretive question. We said that where you have more than one word that are getting at different facets of a recognizable problem, you read them together and you understand them to be aiming at that common core. Doesn't that go a long way to fixing the problem that you identify here, in the sense that obstructing, crowding, or incommoding the use of sidewalks and passages is clearly understood or is susceptible of being clearly understood to mean getting in the way of people using those sidewalks and entries for the use that they're intended?  First is, this case is distinguishable. In Bronstein, the court applied a canon of statutory construction because there was ambiguity about whether more than one word had more than one meaning. In this case, there's no ambiguity because the subcommittee working group specifically proposed a single word block. And the D.C. Council expressly rejected the single word in favor of, there are separate words, and there's a separate discussion for each one of the words. Does that make it facial challenge any more or less compelling? If we did not have that legislative history, if you hadn't told us about that, if we didn't care about that, the statute still has to stand on what it says, doesn't it? That's true, but. And we do have, going back to Shakespeare at least, you have the concept of making sure, at the sure verse, you use more words to make sure that you get the point made. The canons are always to be applied in context. And the canon that says they have to have, doesn't say they have to have different meanings. It says they're presumed to have different meanings. But they're close enough that, as Judge Fillard suggests, they're overlapping at a core. They're trying to make sure that they've covered the core, I think. The D.C. Council forecloses that interpretation because there's no ambiguity. The D.C. Council's not here. The statute's what we've got. I understand. Yeah. But under District of Columbia law, for example, in the Duffy case, if you look at the words in the statute, it takes consideration of the legislative history. In a situation like this, when you're asking yourself, are these three separate words, each with a discrete meaning, or is this just one unitary term? And the D.C. Council made it abundantly clear that these are three separate words, each with a different meaning. And the D.C. Court of Appeals So would you say that the statutes, I don't know what the D.C. statute says, but around the country, there are statutes that make it unlawful to steal, take, or carry away the property of another. Or would you say that that's defined to have different meanings for each one of those words, and therefore that those would all be vague or something? I can't I mean, it isn't uncommon for legislative bodies and or courts and lawyers to use more than one word to make sure that they've got the point covered. Why is this not such a case? Well, my plaintiff's argument is it's not such a case because the D.C. Council made it abundantly clear that it's rejecting the single term block in favor of three separate words with three separate meanings. Exactly given. They have chosen three words. They have chosen three words instead of one word. Why is it not just as logical to assume they're doing so to make sure that they've got the point covered as it is that they're trying to cover three different things? Well, I think there's two reasons. The first is the legislative history makes it abundantly clear that the D.C. Councils expressly rejected the unitary term in favor of retaining these three terms. We're biased to that point. We know we have the three terms instead of the one term. That's clear. With or without legislative issues. What do you think the word in commoting means? What's your view of what it means? Well, if you look at the Coates case, the Supreme Court case. Well, just tell me what you think in commoting means. To subjectively annoy somebody. Okay. If we interpreted it that way, you would have a good case because that's the distinction the court has made. We have an obligation to interpret statutory language to avoid a constitutional problem. So wouldn't we, since it isn't, I mean, even if it was unclear what, even if in commoting could have a different meaning than blocking and crowding, even if it did, wouldn't we avoid an interpretation that created a constitutional problem? That's a canon of interpretation. Right. However, it depends on there being, it also, it runs head on to and collides with the clear legislative intent here, which is each one of these terms has a different meaning. And plaintiffs argued in their brief that since the D.C. Council was so emphatic that each one of these terms had a different meaning, what we have to do is the meaning of each one of these terms is the one that distinguishes it from the other words. Mr. Klaber, where would you point us to for what you're relying on, the D.C. Council saying each term has a separate meaning, and in particular, the meaning of in commoting? Well, I do cite to the page number in my brief. Which report and which? Well, there's a committee. You're referring to the committee report? Right. And I think it's on page seven. There's a discussion of the word crowd, and the committee report says, well, you know what? This, oh, I'm sorry. The committee report on page seven is discussing the subcommittee report. First, there was a subcommittee report which analyzed the statute before it was amended and proposed the legislation which used the word block. And then on page seven of the committee report, that's the report of the Judiciary Committee, the Judiciary Committee looks at each one of the words and explains why it's retaining those three words instead of accepting the proposal of the subcommittee report to use the word block. The Judiciary Committee rejects the proposal of using the word block and says here's why we're going to keep crowd in commode and obstruct. Okay. I do want to ask one other thing, and it may not be normal to ask this question, but it's something I found very disturbing in your brief. On page 11 in the discussion of Coates, excuse me, the discussion of Williams, it is definition by, quote, loops, close quote, of definition, and definition by, quote, loops of definition, close quote, is the definition of, quote, indeterminacy, period, close quote. Then you give a citation of hindsight to Williams 553 U.S. 306. Now, I expected to be able to turn to Williams at 306 and see what context the court used those terms in. Those terms are not in Williams at 306. So I did a Westlaw search of Williams. Those terms are not anywhere in Williams. So I did an all-fed search. Those terms are not anywhere ever used, the loops of definition, are not anywhere ever used in federal court. You cite something as authority for the proposition that it's the definition of indeterminacy in quotations, and give us a cite, and it's not there. Were you trying to deceive the court, counsel? Of course not, Your Honor. Well, what were you doing by putting a quote there with a pinned citation to something that doesn't exist? Because Williams focuses on the indeterminacy, that word indeterminacy or indeterminacy. It certainly does not say loops of definition as the definition of indeterminacy. No, but it uses the term. It doesn't say anything like that. It doesn't have that term in there, the loop of the definition. I'm not even sure it has indeterminacy, but it certainly doesn't have loops of definition. Well, I cited that. I actually Googled it even, and I found only 12 references and none of them were the law. Well, I cited Williams for the proposition that Williams makes the test indeterminate. Would you recognize that usually when you cite, set forth a proposition including quotation marks and give offense to that, the court should be able to find that proposition on that page of those words, and it's not there. Would you recognize that you're misleading the court at the very least? I don't think so, Your Honor. My intention there was to show that Williams uses indeterminate as the test of what makes a statute vague, and then when I Googled the word indeterminate, I came up with a philosophical discussion, and it says If you Google loops of definition, you come up with a philosophical discussion. No. One of the stats that you find on Google will say that in some cases that's the only way to do definition, is by loops of definition. Okay. All right. Thank you, Mr. Kramer. Yes, Your Honor. You're from the district. May it please the Court. Sonia Lovesack for the District of Columbia. I'd like to start with a few affirmative points and then respond to some of Mr. Claiborne's arguments. The claim that the district's blocking passage statute prescribes no course of conduct at all is easily refuted. The statute's reach is delineated in words of common understanding and coalesced around a core behavior as to which the statute may be constitutionally applied. The statute is, in this respect, substantially identical to the one the Supreme Court upheld in Cameron, where the Court instructed that words like obstruct or unreasonably interfere require no guessing as to their meaning. The prohibition against crowding, obstructing, and incommoding is further limited by its application to a defined set of circumstances, conduct that physically blocks or impedes the use of public thoroughfares. Lovesack, is it your position that the conduct of the plaintiffs in this case is covered by the statute? Plaintiffs have brought a facial challenge to the statute. I'm just asking you, the plaintiffs in this case, the conduct that's described in their complaint, is it covered by the statute? There may be factual disputes about whether any of the plaintiffs were actually obstructing. I'm saying the conduct that they allege, assuming it's true, which, of course, it's only an allegation. The complaint is careful not to take a position on whether there was obstruction. What they say is that people were free to come and go around them. How about the picture of Mr. Agnew standing on the porch? Is that conduct that violates the statute? The photo itself wouldn't appear to. How about the description of the other two plaintiffs as they're described in the complaint? Violation or not? Yes, Ms. Williamson, the conduct that was described in the officer's notes at the time, said that she was obstructing the use of the sidewalk. The officer said that, but the complaint describes conduct that she was engaged in. I'm referring you to the facts, not to the officer's conclusion. I think what the complaint reveals is a dispute about whether or not the plaintiff was obstructing. The officer's notes fully reflect an obstruction of the sidewalk or the entryway. Mr. Dennis was on a ramp. Mr. Agnew was on a stoop. The officers noted their views that this was an obstruction or violation of the statute. The plaintiff's complaint says no. Do we have the documents showing what the officers noted? They're not in the joint appendix. I'm not actually sure that they're in the district court record below, but they may be. So, Mr. Dennis, if someone were standing in his yard on a ramp a few feet in front of the porch of his apartment building and an officer wanted to know, does this statute allow me to tell him to move on or not, would that person be covered or not? This is the Dennis situation. The statute itself requires crowding, obstructing, or incommoding the use of the sidewalk  and as the officer said, someone would have had to alter their course and therefore it's obstructing, crowding, or incommoding. Do you accept that understanding? That might be necessary but not necessarily sufficient. What would be sufficient? If the actual use of the sidewalk were being obstructed. So, for example, if two people are just sort of coming and going and one sort of makes room with their shopping bag passing another person, the use of the sidewalk is not being obstructed in that example, even if someone might have had to sort of nudge to one side. So obstruction or crowding, obstructing, or incommoding the use of or the entry to requires more than a de minimis sort of interaction and the statutory language itself makes that clear. How does it make that clear? The statute specifically says that crowding, obstructing, or incommoding requires, you know, in order to crowd, obstruct, or incommode the use of or the entry to. So that's a functional standard. It involves something that the officer can observe. You can take into account the context of the situation. I thought the district's position was that there needn't actually be anyone being blocked. Is that the district's position or not? That you can look at someone all alone on a sidewalk and decide that that is crowding, obstructing, or incommoding? It could. That is the district's position that an officer could find someone all alone on the sidewalk and that would be fine. Well, then, what do you do with the word use? I thought your answer to Judge Sentel's first question to counsel was, for Mr. Claiborne, was to focus on the word use. You've read the word use out of the statute. You want it in there. Why would you argue that it doesn't require actually blocking or crowding the use of something? Why would you make that argument? I'll clarify. At the far end of the spectrum, it's possible for someone to arrange themselves on the sidewalk. For example, a sumo wrestler sitting on the sidewalk, a narrow sidewalk, and absolutely obstructing the entire sidewalk. The officer could observe that behavior without having another pedestrian go by. But there's more than that. The officer, under D.C. law, must actually observe the crowding, obstructing, and incommoding. So the officer, him or herself, could clearly be the person who is actually interacting with, and the statute requires that interaction, to find out whether the use of the statute or the entryway. So your point is that there doesn't… If someone lay down across the sidewalk completely and there was nobody else around, that would be obstructing the use, even though there wasn't anybody there, right? That would be within the terms of the statute, yes. But you're not reading… So the word use is still a critical part of the statute as far as you're concerned, right? Yes. Although the D.C. court in Adams construed this terminology without the disorderly conduct element on a sidewalk or in an entryway, that there isn't any need to show that anyone was actually blocked. Right. Adams was a case under the old disorderly assembly statute,  there was no sort of… It took… It prevented someone from being prosecuted for sort of innocent incommoding, if you will. And the statute here solves that problem very expressly by requiring that the statute only applies, and this is another limiting factor in the statute, where a person continues or resumes the crowding, obstructing, or incommoding after one being informed that they were crowding, obstructing, or incommoding. I read that argument in your brief, and I'm just not sure on reflection that it does the work that you attribute to it. And this is the difficulty that I have. In light of Morales, if you have a statute that covers conduct that's vague, let's say, and I'm sitting on my sidewalk in front of my house, on the sidewalk, with my tool bag, and I'm weeding the tree box, and I'm actually blocking the statute, the sidewalk, and a police officer comes and says, move along. And I think innocently, I have no intention of blocking. Nobody's come by here in the last three hours. If they do, I'll move. And the officer says, move along. And I say, well, why? I don't think I'm violating any law. And the officer says, yes, you are. Move along. So it hasn't actually narrowed the statute or rendered it clear that the officer has told me that I'm in violation. So if there's – and you may win on some other ground, but if it is in fact the case that the statute is vague in the way that plaintiffs challenge, I'm not sure that mens rea is provided by the move along order. If it were the case that crowding, obstructing, and incommoding was a standardless definition, then I would be inclined to agree. This case would look a lot like Morales. The problem is that we know from Cameron and, frankly, a long line of cases that says when you are obstructing, that is essentially wrongful conduct. The city has a duty to keep public thoroughfares, sidewalks, roads, entrances to public buildings free and clear. And so the statute is aimed precisely at wrongful behavior, and we know that it isn't. But there isn't any intent requirement, is there? Other than the move along order and the failure to respond. There's no intent requirement. Well, there's actually two responses. One, there was actually no, quote-unquote, intent requirement in Cameron either, and that didn't trouble the Supreme Court at all. And my sense from reading that case is that the obstruction itself is essentially implied, that one knows what one is doing. And so the mens rea is essentially baked in to the notion that you're crowding, obstructing, or incommoding. Now here, the statute itself doesn't require perhaps what might be a close question because the officer informs the person that they are crowding, obstructing, or incommoding and then asks them to stop that behavior. Right, but Morales said that wasn't sufficient to create a mens rea requirement in that statute. It wasn't, pardon me. Isn't that right? It wasn't sufficient in Morales because there was nothing that was built on. It was essentially Well, what else? What's in this statute? By the way, is this argument critical to your defense of the statute? Do we have to agree with you that there's a mens rea requirement here to hold it constitutional? No, based on Cameron where there was no such requirement. Even without Cameron, is there any constitutional requirement that there be a mens rea held on to the statute? Not at all. Why are you making such a big deal of this argument? Why do you say in your brief that there's a mens rea requirement when it's not even necessary to your defense of the statute? Well, I think we've covered the waterfront in the brief. I see. The mens rea requirement is sometimes used to see whether one can mitigate any vagueness that might be found in the statute. Here, the district looks to the statute, and this interaction with the officer, where there's actually back and forth that would establish purpose, is essentially mitigating any vagueness that could be in the statute. But as the district's brief puts forth, we don't rely on that for the constitutionality of the statute, even if there wasn't A2, which is the statutory provision, which is the interaction with the law enforcement officer of the statute. No, my question was different. A2 is in there. You do have A2 in there. But if we don't think that that builds a mens rea requirement into the statute, as Morales said, and we don't think the other words of the statute create one, is it still constitutional? Yes. Okay. Thank you. What is the meaning of incommoding? So incommoding in this context means to hinder, to interfere, to obstruct. If it were not in the statute, would that materially alter it? Or is, in your view, is incommoding a repetition of obstructing or crowding? The definitions of each term make clear that these are overlapping definitions. Wholly or not in the case of incommoding? What does incommoding add that isn't already there from crowding or obstructing? I'm actually not sure it adds anything that the words obstruct wouldn't cover. The dictionary definitions overlap as a literal matter. Incommoding was a term more often used. Again, the phrase crowding, obstructing, and incommoding comes from 1892. Right. And one of the reasons that the council maintained that language is because it has essentially a long history of being applied. Right. It's interesting because I was trying to get a handle on what does it mean, and I was looking at some of the older D.C. cases, and there's a 1901 D.C. court appeals case, Akers v. Marsh, that defines incommode as causing inconvenience. There is a range of definitions of incommode. One can mean hinder, but there's also the sort of more subjective inconvenience, and that's what causes concern in a statute like this is when officers are invited to understand it in that more open-ended, open to interpretation. Is it annoy? Is it no apparent purpose? Or is it something objective? And to the extent that many of the definitions talk about inconvenience to passers-by, it does seem to have more of the flavor of those problematic terms. Let me address that directly, and specifically Mr. Claiborne's argument that incommode is essentially synonymous with the word annoying. That may be true as a matter of— I would say inconvenience. So inconvenience probably has two meanings. One might sort of border on an annoyance, but the other one is essentially to physically sort of impede, and that's the way the statute uses the term. Just like there's no such thing as annoying the use of the sidewalk, the inconveniencing the use of the sidewalk makes just as much sense as sort of impeding the use of the sidewalk or hindering. So in that sense, inconvenience simply sort of, again, sort of just creates a broader statute than the one Mr. Claiborne would prefer, but that's no reason that the statute is vague. So it doesn't require that anyone actually be blocked? With the caveat that the officer, him or herself, is physically there, and so to the extent the officer, him or herself, is actually being blocked, it's just a matter of enforcing the statute. So the officer has to determine that someone might— someone there might be blocked, or might— I mean, it's not even blocked. It might be, as the officer in—I think it was in this case said, a citizen trying to use the walkway would have had to deviate from the path. Is that permissible or exotic? I mean, is that a core or an exotic interpretation, in your view, of what the statute covers? A citizen trying to use a walkway would have to deviate. Covered or not? It might depend on the degree of the obstruction. So if one had to actually hop off the sidewalk into the road and walk around, then I would say that would be a common use, a very sort of middle-of-the-road use of the statute. As one gets closer and closer to how far off the path to be deviated, that's where there is sort of a gray area. But the Supreme Court has been very clear that these kinds of line-drawing problems are not void-for-vagueness issues. They're resolved by the application of reasonable doubt. The officer must eventually, in the District of Columbia, ultimately must prove this obstruction. And so issues, sort of matters of degree, don't raise the void-for-vagueness question. The difficulty here, I mean, I understand, you know, obviously the difficulty in writing a statute that's clear, and I'd like to know what would be lost if the incommoding part were out. Because if you had a statute that said obstruct or crowd, it would seem to be more constrained. I'm not sure if you agree. You were a little waffly when I said it's incommoding, cover more. I don't think it covers more. I would also say that the fact that words are known by their associates, and again, this is just a statutory canon, the terms sort of converge on a core course of conduct. And so even if there were sort of outlier dictionary types of definitions, the fact that the crowding, obstructing, or incommoding comes in a phrase, and that phrase is rooted in statutory context, limits. I see that sitting here in the courtroom and reading Bronstein and, you know, constitutional avoidance, and I'm very sympathetic to that position. It seems like a strong position. The difficulty is this is used by police officers out in public, and the statute, unlike the statute that we looked at in Bronstein, covers a huge amount of conduct, right? It covers pedestrians in a street, avenue, alley, road, highway, or sidewalk, the entrance of any public or private building or enclosure, and pretty much most normal uses of most widths of sidewalks and entrances partially obstruct other people's use of those places. So the difficulty is if you have officers who are wanting to bear down on certain components of the citizenry, what in this statute gives them a limit that they know how to keep within that doesn't just give them a move on border control over everybody? That's the difficulty, and we have the record also of the very high rates of usage of these kind of public border statutes by the police in D.C. out of line with cities all over the country. Well, actually, so the record reflects, so in 2009, when the District of Columbia began thinking about reorganizing the disorderly conduct type statutes, it's in the legislative record here. In commoting offenses were 27 out of approximately 2,700 disorderly conduct offenses. Last year, so that's 27 in 2009. Last year there were 24 arrests. So the enforcement of the statute is both rare and flat across, or relatively flat across time. The point that you're making, though, about how do we sort of get into the narrowing aspect of the statute, the core here is crowding, obstructing, or in commoting. And just as the Supreme Court found in Cameron, a word like obstruct just doesn't require guessing as to its meaning. An obstruct is not synonymous with standing or walking or loafing or loitering. It's obstructing. It is crowding. It is in commoting. And so it's limiting the application of the statute or the common terms that sort of have ordinary meaning and are sort of coalesced around wrongful conduct. In response to Judge Pillard's question, you gave some statistics about how the statute's actually used in the district. Is that relevant to this case at this point? Not at all. This court is reviewing the statutory language. The District of Columbia's submission is that the statutory language in no way puts forward a standardless statute that vests unlimited discretion in law enforcement officers. And that is the gravamen of the claim. Because wouldn't one way to know whether the discretion is unlimited is to look to see how the statute's actually enforced in practice? Wouldn't that tell us something? I'm aware of no authority that you're using. Pardon me? I'm not aware of any authority. I was just asking a logical question. I mean, if there's some question about what the word in commoting means and there's a clear practice of it being misused in the district, doesn't it tell us something about it? You cite legislative history. Doesn't it tell us what the district thinks about it? Right. Well, the one case from the District Court of Appeals that, again, this applied the prior version of the statute, but it had the same phrase, crowding, obstructing, or in commoting, is TATATs. In that case, what the court found was that the protest context was that the protesters were in commoting because they were lying on the ground in front of the building. And people could sort of have to pick their way over the protesters who were lying on the ground. And the court said this is an example of in commoting. That's how they described this behavior. And it was important to the court there that there was a finding of intentional blocking. But it's your view that that's not required here. Intentional blocking is not required. The intent can come from the very fact of obstructing. I mean, circumstantial evidence of intent. People are lying down trying to actually make it hard for people to go into the congressional building because they want to draw attention to their point. So there there was evidence of intent according to the court of appeals. That's what I'm saying. But the court of appeals found it legally significant in terms of sustaining the conviction that there was intent, that it wasn't innocent conduct. But you're saying that this statute actually doesn't require any showing of intent. So that was a tempest in a teapot. The statute would be constitutional, in our view, even without sort of the second part of the statute. The fact of obstruction can be inferred, you know, the mens rea can be inferred from the fact of obstruction. You're absolutely right about TATATs. That's exactly, the courts will obviously, this is purposeful, and therefore, you know, we don't need to show breach of peace. Again, this is the prior version of the statute, which sort of emerged from common law. Certainly having a purpose in your statute is helpful. Here, it's arguably in there twice. You don't need the second half. It's almost maybe felt in suspenders. But there is a second half where the officer is informing the person, and they basically at that point sort of know that they're crowding and are choosing to remain in that posture. If there are no further questions, the judgment should be affirmed. Thank you. Mr. Claiborne, you are out of town, out of time, but you can have two minutes if you would like. Thank you, Your Honor. With respect to whether the statutes apply to my clients, the district always took the position in the district court that the statutes did apply to my clients, and I make that point in my brief. Another point is in the Adams case. But your complaint alleges that the statute is facially invalid. That's your allegation, and that's the way the district court understood the case. Under Brown v. Sessoms. So it doesn't make any difference at all what the district thought about how the statute applied to your three clients. It's a question that the court asked. It's a question that the court asked the district during the argument. The district, I didn't think, was able to say, so I was clarifying the point. Oh, all right. But you agree it's not relevant. I do not, and because I think this, whether or not under Brown v. Sessoms and the Supreme Court case, Johnson, I think if you want to know whether a claim is as applied or a facial, you look to what the complaint says, and I allege all kinds of facts showing how this statute is applied in an arbitrary and discriminatory manner against African Americans. I seek monetary relief on behalf of those clients. And also, the Supreme Court in Johnson has made clear that if a statute is vague in one application, it's vague in every single application, and I argue both in the district court and in this court that that renders this facial as applied distinction nugatory. And I pointed out that in Johnson, there is simply in the following decisions by the Supreme Court, they don't even use the term facial anymore. They don't use the term applied. If there's a Fifth Amendment vagueness challenge, the statute's either vague or it's not. And I do think logically, and as a matter of law, as you were suggesting in one of your questions to counsel, that if you have evidence that the statute is applied. Okay. Anything else? Okay. Thank you, Mr. Flagellini. Yes, Your Honor. And thank you both. The case is submitted.
judges: Tatel, Pillard, Sentelle